UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
YONEL CHRISTOPHER JEAN
CHARLES,

                    Plaintiff,

  -against-

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
13-CV-03432 (FB)

*Appearances:*
*For the Plaintiff:*
HERBERT S. FORSMITH, ESQ.
26 Broadway, 17th Floor
New York, NY 10004

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
JASON P. PECK, ESQ.
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

      Yonel Christopher Jean Charles seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits under the Social Security Act. Both parties move for judgment on the pleadings. For the following reasons, the Court grants Charles's motion and remands for further proceedings. The Commissioner's motion is denied.

# I.

On June 27, 2008, Charles injured his left ankle when he slipped into a pothole in a parking lot. At the time, he was employed as a security guard. Charles returned to full-time work in October 2008 but was laid off in July 2009. On February 1, 2011, after periods of unemployment and part-time employment, he applied for disability insurance benefits, alleging disability due to his ankle injury and depression. After the Social Security Administration denied his application, Charles had a hearing before an Administrative Law Judge ("ALJ") on May 7, 2012.

In a written decision issued on May 17, 2012, the ALJ concluded that Charles was not disabled. Applying the familiar five-step evaluation process,[1] the ALJ first determined that Charles had not engaged in substantial gainful activity since he was laid off in July 2009. Second, the ALJ found that his ankle injury qualified as a severe impairment, while his depression did not. Third, the ALJ considered whether Charles had an impairment or combination of impairments that met or equaled the requirements of a listed impairment, and concluded that he did not. Next, the ALJ found that Charles

---

[1]Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must find that a claimant is disabled if she determines "(1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one that conclusively requires a determination of disability, [] (4) that the claimant is not capable of continuing in his prior type of work, [and] (5) there is not another type of work the claimant can do." *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing 20 C.F.R. § 404.1520(b)-(f)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *See* 20 C.F.R. § 404.1560(c)(2); *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir. 2000).

had the residual functional capacity ("RFC") to perform the full range of sedentary work, except that he could not climb ladders, ropes, or scaffolds, and could only climb stairs for half of the work day. Applying that RFC to the remaining steps, the ALJ found that Charles was unable to perform his past relevant work but could perform other work that exists in significant numbers in the national economy.

The Appeals Council subsequently denied Charles's request for review, rendering final the Commissioner's decision to deny benefits. Charles timely sought judicial review.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

Charles argues that the ALJ erred by concluding that his depression was not severe and by failing to consider the effect of his depression in combination with his other ailments. He further argues that the ALJ's RFC determination was flawed because the ALJ failed to accord appropriate weight to the opinion of his treating

physician, and because the RFC was not supported by substantial evidence. The Court will address these arguments in turn.

**A.     Evaluation of Charles's Mental Impairment**

Charles first contends that the ALJ mistakenly concluded, at step two of the sequential evaluation process, that his depression was not severe. This argument misunderstands the function of the second step. As the Second Circuit has held, step two is merely a filtering device "intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). In this case, the ALJ determined that Charles *does* have a severe impairment, namely his ankle injury, and so Charles's claim was not dismissed at step two.

Charles further argues that, even if his depression is not severe, the ALJ was required to consider it in assessing his RFC but failed to do so. The Court disagrees. In determining a claimant's RFC, the ALJ "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996). A "medically determinable impairment" is "one that can be shown by medical evidence, consisting of medical signs, symptoms and laboratory findings." SSR 99-2P, 1999 WL 271569, at *1 (Apr. 30, 1999).

Here, the ALJ found that Charles had no medically determinable mental impairment, a conclusion that finds ample support in the record. At the May 7, 2012

hearing, Charles testified that he suffered from depression as a result of "dealing with [] being actually disabled," and that his depression interfered with his ability to engage in recreational activities. AR 49.[2] However, Charles acknowledged that he had not sought medical treatment for his depression and had never been diagnosed with a psychiatric disorder.

Following the hearing, the ALJ sent Charles to a consultative examination by Dr. Paul Herman, a psychologist, who performed a psychiatric evaluation of Charles on May 16, 2011. During the evaluation, Charles told Dr. Herman that he "feels sad about not working full time to support himself," but admitted that his depression did not significantly impact his daily activities. AR 422. Charles also told Dr. Herman that he had good family relationships, friends with whom to socialize, and several hobbies and interests. Dr. Herman performed a mental status examination of Charles and found that he exhibited neutral affect and mood, a clear sensorium, coherent and goal-oriented thought processes, and normal cognitive functioning. Dr. Herman concluded that the examination results "do not appear to be consistent with psychiatric problems that would significantly interfere with the claimant's ability to function on a daily basis." AR 422.

In all, the only concrete evidence Charles offered regarding his depression is his own somewhat vague testimony at the hearing. But a claimant's testimony alone

---

[2]All citations to "AR" are to the Administrative Record.

cannot constitute substantial evidence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[]; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment"). Accordingly, the ALJ did not err by failing to consider Charles's depression in assessing his RFC.

**B.  Evaluation of Residual Functional Capacity**

Next, Charles attacks the ALJ's RFC determination on two grounds: first, that the ALJ violated the treating physician rule by relying primarily upon the opinion of a consulting, rather than treating, physician; and second, that the ALJ's RFC determination is not supported by substantial evidence. While the Court concludes that the ALJ did not violate the treating physician rule, it agrees with Charles that the ALJ's RFC determination is not supported by substantial evidence.

The ALJ found that Charles has the residual functional capacity to perform a restricted range of sedentary work. The Commissioner's regulations define "sedentary work" as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Specifically, the ALJ found that Charles had the residual functional capacity to perform "the full range of sedentary work . . . except that [he] cannot climb ladders, ropes, and scaffolds and can climb stairs one half of the work day." AR 24.

In making this finding, the ALJ ostensibly considered the medical reports of two doctors: Dr. Joseph Bosco, the treating physician, and Dr. Evelyn Wolf, the Commissioner's physician. Dr. Bosco, an orthopedic surgeon, initially treated Charles in December 2010 upon the referral of Dr. Sean Thompson, after Dr. Thompson performed an MRI in November 2010 that revealed a severe osteochondral injury of the medial talar dome with cartilage loss, marrow edema, and cystic change.

Dr. Bosco initially observed an osteochondritis dissecans ("OCD") lesion of the medial talar dome and informed Charles that "OCD lesions . . . are notoriously very difficult to treat and do very poorly." AR 463. After discussing the possibilities for treatment with Charles, Dr. Bosco authorized a left-ankle arthoscopy and bone grafting of the OCD lesion, though he noted that Charles "will need numerous surgeries on this ankle." AR 459, 464. The arthoscopy was performed on July 21, 2011, and Charles thereafter continued monthly visitations with Dr. Bosco, who opined in April 2012 that Charles "remain[ed] completely disabled from his occupation" and "had not yet reached maximal medical improvement." AR 452, 456.

In contrast, Dr. Wolf conducted a consultative examination of Charles on May

16, 2011, and concluded that he demonstrated only mild limitations in lifting, moderate limitations in walking, standing, and climbing, and no limitation in sitting provided that he could stretch from time to time. Dr. Wolf also noted that Charles "dragged his left leg," that "his gait was abnormal," and that he "[c]annot walk on heels and toes without difficulty." AR 425.

As an initial matter, the ALJ's RFC determination did not violate the treating physician rule, under which "[t]he opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999). According to the Commissioner's regulations, a treating source's opinion regarding a claimant's RFC – as opposed to an opinion about the nature and severity of the claimant's impairments – is not entitled to controlling weight. *See* 20 C.F.R. § 416.927(e) ("Although we consider opinions from medical sources on issues such as [the RFC], the final responsibility for deciding these issues is reserved to the Commissioner"); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that a claimant is disabled cannot itself be determinative."). Thus, the ALJ was correct to disregard Dr. Bosco's opinion that Charles was "completely disabled," since the doctor was rendering an opinion on an issue reserved to the Commissioner.

However, the Court agrees with Charles that the ALJ's RFC determination is ultimately not supported by substantial evidence. As noted, the ALJ found that Charles

could perform sedentary work but could not "climb ladders, ropes and scaffolds and [could] climb stairs only one half of the work day." AR 24. However, none of the medical evidence cited by the ALJ provides any support for these conclusions. In her written report, Dr. Wolf opined that Charles is "moderately limited in walking, standing, and climbing," but provided no detail as to what these "moderate limitations" might entail. AR 426. Dr. Bosco's medical reports, meanwhile, contain no statements whatsoever about Charles's ability to climb; rather, Dr. Bosco consistently concluded that Charles was unable to perform his work as a car driver, but made no assessment of his other physical capabilities. Further, there is no indication that the ALJ ever contacted Dr. Bosco to request a medical source statement about Charles's capacity to perform other work, though the ALJ is required to do so by the Commissioner's regulations. *See* 20 C.F.R. § 416.913 ("[W]e will request a medical source statement about what you can still do despite your impairment(s)").

Although the ALJ does not cite to it in his written opinion, his RFC determination appears to be drawn almost exclusively from a Physical RFC Assessment form prepared in July 2011 by D. Richardson, a non-medical professional known in Social Security terminology as a Single Decision Maker ("SDM"). It is unclear whether the form was prepared based upon an examination of the medical records alone or whether an in-person consultation was conducted; in any event, the form is a standardized, checklist-based assessment with only limited options available to the

9

SDM. Despite the cursory nature of the form, the ALJ appears to have simply adopted its conclusions in his own RFC determination. For example, in the Postural Limitations section of the form, the SDM concludes that Charles can only occasionally climb stairs, ladders, ropes, and scaffolds – the only place in the record where anyone renders a detailed opinion about Charles's ability to climb. Similarly, in the Exertional Limitations section, Richardson concludes that Charles cannot carry weights exceeding ten pounds. This conclusion is echoed in the ALJ's written opinion, though it is unsupported by any other medical evidence in the record.

An SDM is not a medical professional, and so an RFC assessment from such an individual cannot, standing alone, constitute substantial evidence to support the ALJ's decision. *See Sears v. Astrue*, 11-cv-138, 2012 WL 1758843, at *6 (D. Vt. May 15, 2012) (noting that "courts have found that an RFC assessment from [an SDM] is entitled to no weight as a medical opinion," and collecting cases). Instead, the ALJ has a duty to make a detailed assessment of a claimant's work-related abilities and to "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). By basing his RFC assessment almost exclusively upon a standardized form prepared by a non-medical professional, the ALJ failed that duty. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (concluding that, while failure to conduct an explicit function-by-function analysis is not *per se* error, "[r]emand may

be appropriate . . . when an ALJ fails to assess a claimant's capacity to perform relevant functions . . . or where other inadequacies in the ALJ's analysis frustrate meaningful review.").

Accordingly, the Court finds that the ALJ's RFC determination is not supported by substantial evidence. Upon remand, the ALJ should reevaluate Charles's RFC by assessing his capacity to perform relevant functions, and should endeavor to obtain medical source statements from Charles's treating physicians.

### III.

For the foregoing reasons, Charles's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 10, 2014